UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OHIO

| | | |
|---|---|---|
| KELLY BRINSON II and DEREK BRINSON, | ) | |
| Individually and as Co-Administrators of the | ) | Case No. 1:10CV424 |
| ESTATE OF KELLY BERNARD BRINSON, | ) | |
| DECEASED, | ) | |
| 5105 Paddock Road, Apartment A | ) | Judge S. Arthur Spiegel |
| Cincinnati, Ohio 45237 | ) | Magistrate Karen L. Litkovitz |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **SECOND AMENDED** |
| | ) | **COMPLAINT** |
| | ) | |
| UNIVERSITY HOSPITAL, INC. | ) | **JURY DEMAND** |
| 234 Goodman Street | ) | |
| Cincinnati, OH 45219 | ) | |
| | ) | |
| Also Serve: | ) | |
| UNIVERSITY HOSPITAL, INC. | ) | |
| c/o Registered Agent of Service | ) | |
| Ct Corporation System | ) | |
| 1300 East Ninth Street | ) | |
| Cleveland, OH 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE HEALTH ALLIANCE OF | ) | |
| GREATER CINCINNATI | ) | |
| 3200 Burnett Avenue | ) | |
| Cincinnati, OH 45229 | ) | |
| | ) | |
| Also Serve: | ) | |
| THE HEALTH ALLIANCE OF | ) | |
| GREATER CINCINNAT | ) | |
| c/o Registered Agent of Service | ) | |
| Ct Corporation System | ) | |
| 1300 East Ninth Street | ) | |
| Cleveland, OH 44114 | ) | |
| | ) | |
| and | ) | |
| | ) | |

LEE ANN LISKA, CEO                      )
The University Hospital, Inc.           )
234 Goodman Street                      )
Cincinnati, Ohio 45219                  )
                                        )
and                                     )
                                        )
JENNIFER MOORE, M.D.                    )
c/o University Hospital, Inc.           )
234 Goodman Street                      )
Cincinnati, OH 45219                    )
                                        )
and                                     )
                                        )
JOHN VRACIU, D.O.                       )
c/o University Hospital, Inc.           )
234 Goodman Street                      )
Cincinnati, OH 45219                    )
                                        )
and                                     )
                                        )
JAMES H. CURELL, M.D.                   )
c/o University Hospital, Inc.           )
234 Goodman Street                      )
Cincinnati, OH 45219                    )
                                        )
and                                     )
                                        )
BRYAN GRIFFIN, D.O.                     )
c/o University Hospital, Inc.           )
234 Goodman Street                      )
Cincinnati, OH 45219                    )
                                        )
and                                     )
                                        )
EUGENE FERRARA                          )
3 Edwards Center                        )
51 West Corry Street                    )
Cincinnati, Ohio 45221                  )
                                        )
and                                     )
                                        )
MARK ZACHARIAS                          )
3 Edwards Center                        )
51 West Corry Street                    )
Cincinnati, Ohio 45221                  )

|  | ) |
| and | ) |
|  | ) |
| ERIC WEIBEL | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
| and | ) |
|  | ) |
| JASON REEME | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
| and | ) |
|  | ) |
| KELLI MCDANIEL | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
| and | ) |
|  | ) |
| ADRIANNE SPRAGUE | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
| and | ) |
|  | ) |
| TRAVIS PROCTOR | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
| and | ) |
|  | ) |
| PHILLIP KIDD | ) |
| 3 Edwards Center | ) |
| 51 West Corry Street | ) |
| Cincinnati, Ohio 45221 | ) |
|  | ) |
|  | ) |
| Defendants. | ) |

## I.  INTRODUCTION

1. This lawsuit challenges the inadequate medical care and challenges as excessive the repeated use of a taser on a civilian patient at University Hospital in Cincinnati, Ohio.  Mr. Brinson admitted himself to University Hospital for mental health treatment on January 17, 2010.  He took the medications he was prescribed but nonetheless became agitated on January 20, 2010.  The Defendant medical staff administered additional psychiatric medication and called the Defendant University of Cincinnati police officers.  Those officers escorted Mr. Brinson to a seclusion room, placed him in restraints and, in the presence of the medical staff, tased Mr. Brinson three times.  Mr. Brinson suffered extreme pain and experienced respiratory and cardiac arrest.  He died three days later.  Mr. Brinson was not a criminal.  He was a civilian hospital patient.  The only drugs in his system were placed there by the Defendants.  He was herded and then electrically prodded like an animal rather than treated like a human being in need of medical care.  His Co-Administrators bring this civil rights, malpractice, discrimination and negligence action to secure fair compensation and to encourage these and similar Defendants to provide adequate treatment to University Hospital patients in the future.

## II.  JURISDICTION

2. Jurisdiction over claims brought under the Civil Rights Act of 1871 and the Rehabilitation Act of 1973, 29 U.S.C. §791 et seq. is conferred on this court by 28 U.S.C. §§ 1331, 1343 (3) and (4).  Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367.  An affidavit pursuant to Ohio Rule Civ. Proc. 10(D) (2) is on file in this action in support of the medical claims. See Doc. 10-1.  Venue is proper in this Division.

## III. PARTIES

3.  Kelly Brinson II and Derek Brinson are citizens and residents of Hamilton County, the State of Ohio and the United States of America. Kelly Brinson II is the son of Kelly Bernard Brinson, and Derek Brinson is the brother of Kelly Bernard Brinson, and they have been duly appointed by the Hamilton County Probate Court to serve as Co-Administrators of the Estate of Kelly Bernard Brinson, Deceased. Copies of the Entry appointing them as Co-Administrators are on file in this action as Doc. 16-1.

4.  Defendant University Hospital Inc. is a corporation and at all times relevant to this action it acted jointly with employees of the state of Ohio with respect to security at University Hospital. University Hospital Inc. is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Defendant University Hospital Inc. is a part of The Health Alliance of Greater Cincinnati.

5.  Defendant The Health Alliance of Greater Cincinnati is a corporation and at all times relevant to this action it acted jointly with employees of the state of Ohio with respect to security at University Hospital. The Health Alliance of Greater Cincinnati is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6.  At all times relevant to this case, Defendants Lee Ann Liska, CEO, Jennifer Moore, M.D., John Vraciu, D.O., James Curell, M.D., and Bryan Griffin, D.O., were employed or acting as employees of University Hospital Inc. These defendants also acted jointly with state employees with respect to security at University Hospital. These defendants are each "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. They are each sued in their individual capacity.

7. Defendants University Hospital, Inc, the Health Alliance and Lee Ann Liska, CEO, Jennifer Moore, M.D., John Vraciu, D.O., James Curell, M.D., and Bryan Griffin, D.O. are hereinafter referred to as the "Medical Defendants."

8. Defendant Eugene Ferrara is the Chief of Police for the University of Cincinnati.  Defendant Ferrara is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual capacity.  He was a policy maker with respect to customs, practices, policies and procedures regarding security at the University Hospital.

9. Defendants, Mark Zacharias, Eric Weibel, Jason Reeme, Kelli McDaniel, Adrianne Sprague, Travis Proctor, and Phillip Kidd, were, at all times relevant to this action, employed by the State of Ohio as police officers at the University of Cincinnati.   These Defendants are each "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are each sued in their individual capacity.

10. Defendants Eugene Ferrara, Mark Zacharias, Eric Weibel, Jason Reeme, Kelli McDaniel, Adrianne Sprague, Travis Proctor, and Phillip Kidd are hereinafter referred to as the "Police Defendants."

## IV. FACTS

**A. Abuse of Kelly Bernard Brinson**

11. On January 17, 2010, Kelly Bernard Brinson voluntarily submitted himself to University Hospital, Inc. for medical help.  He was suffering from hand pain, paranoid schizophrenia, bi-polar disorder, delusions, and other related mental illnesses.

12. Kelly Bernard Brinson was admitted on that day to the mental health unit on the eighth floor at University Hospital.

13. At all times relevant to this action, Defendant Dr. James Currell was the physician responsible for overseeing the treatment received by Mr. Kelly Bernard Brinson in the mental health unit at University Hospital.

14. On January 20, 2010, Kelly Bernard Brinson became agitated and was given medication pursuant to an order by Defendant Dr. Griffin.

15. Mr. Brinson remained agitated and was directed to a seclusion room by Defendants Moore and Vraciu.

16. Kelly Bernard Brinson was then escorted by several of the Defendants including but not limited to  Defendants Vraciu, Proctor and Zacharias to room #8432, the "seclusion room."

17. Once in the seclusion room, Kelly Bernard Brinson positioned himself behind a bed.  By this time, Defendant officers Zacharias, Weibel, Reeme, McDaniel, Sprague, Proctor, and Kidd were also in the seclusion room, along with several of the Medical Defendants named in this action.

18. When dealing with mentally ill patients who have special needs, it is standard medical and law enforcement practice to speak to the patient in a calm, non-threatening manner, to tell the patient the officer is present to help, to take as much time as necessary to avoid using force, to avoid using handcuffs and tasers, and to avoid threatening or touching the patient unless absolutely necessary to protect the safety of the patient, staff or other patients.

19. Kelly Bernard Brinson was not able to move the bed as it was SECURED to the floor.

20. Kelly Bernard Brinson, who was an African American, was very agitated and resistant to the efforts of the medical staff in the room to place him in restraints.  He repeatedly yelled that slavery was over and he repeatedly pleaded not to be shackled and not to be treated like a slave.

21. As part of the use of force on Mr. Brinson, Defendant Zacharias threatened Kelly Bernard Brinson with his taser and actually discharged the taser three times.

22. On information and belief, as part of the use of force on Mr. Brinson, Defendant Reeme directed Defendant Zacharias to deploy the taser against Mr. Brinson.

23. On information and belief, as part of the use of force on Mr. Brinson, Defendant McDaniel threatened Mr. Brinson with her taser.

24. On information and belief, as part of the use of force on Mr. Brinson, Defendants Weibel and Proctor physically rushed Mr. Brinson, lunged at him, and physically attempted to wrestle him to the floor. Other Police Defendants, including but not limited to Zacharias, McDaniel, Sprague, Reeme, and Kidd, also wrestled with Mr. Brinson.

25. Defendant officers Weibel, Proctor, Zacharias, McDaniel, Sprague, Reeme, and Kidd all used excessive physical force against Mr. Kelly Bernard Brinson. Further each of these Defendant officers failed to protect Mr. Brinson from the excessive force of the other Defendants.

26. At all times relevant to this action Defendants Moore, Vraciu, Currell and Griffen also failed to protect Mr. Bernard from the excessive force used by the Police Defendants on Mr. Brinson, including but not limited to the taser.

27. The conduct that Kelly Bernard Brinson engaged in before being restrained on the bed in room 8423 was a manifestation of his mental illness.

28. During his time in the hallway and in the seclusion room Mr. Brinson was experiencing psychotic agitation and was in need of appropriate mental health crisis management and treatment.

29. Contrary to well accepted law enforcement standards, the Police Defendants and the Medical Defendants failed to verbally deescalate the confrontation with Kelly Bernard Brinson. Instead, acting negligently, unreasonably, intentionally, purposefully, recklessly, with malicious purpose and/or in bad faith, Defendant officers Weibel, Proctor, Zacharias, McDaniel, Sprague, Reeme, and Kidd made shows of force, used escalating threats, including threatening to handcuff and tase Kelly Bernard Brinson, and then further escalated the situation by rushing Kelly Bernard Brinson and using unreasonable and excessive physical force, including a taser.  Defendants Moore, Vraciu, and Griffin stood by, failed to protect Mr. Brinson and permitted the Police Defendants to use excessive force, including the taser.

30. Defendant officers Weibel, Proctor, Zacharias, McDaniel, Sprague, Reeme, and Kidd eventually placed Mr. Kelly Bernard Brinson on the bed and applied four point restrains with an additional strap to his body.  .

31. Shortly after being placed on the bed in the seclusion room, Mr. Kelly Bernard Brinson stopped breathing and became unresponsive.  A code was called and his heart function was restored.  He died as a result of the excessive force on January 23, 2010.

32. Kelly Bernard Brinson was tased in the abdomen and right thigh.  At the time of the tasing he was heavily drugged with powerful medications administered by the Medical Defendants making him infirm as well as physiologically and metabolically compromised.

33. At the time of the use of force in this case, Taser International, the company that manufactures the Taser, had issued a product warning known to the Police Defendants indicating that the device can cause  "serious injury or death… especially at risk are persons…who are physically infirm."  The label also warns of dangers to "physiologically or

metabolically compromised persons."  Finally the label also warns of dangers to "sensitive body parts" including the "chest or breast." Defendants ignored all of these product warnings.

## B.  Inadequate Medical Care

34. The Medical Defendants' services, care, and treatment were negligent and fell below acceptable levels of the standard of care in treating Kelly Bernard Brinson.

35. Medical Defendants negligently breached the standard of care in, but not limited to, the following manner:

- failing to use well recognized de-escalation techniques to calm Kelly Bernard Brinson down;
- inappropriately delegated the care of a patient to law enforcement;
- prematurely turning over a patient to law enforcement personnel;
- failing to provide Kelly Bernard Brinson with a patient advocate;
- unlawfully, and contrary to OAC 5122-14-10, using and/or authorizing the use of law enforcement restraint devices;
- failing to provide adequate staff for the patient population;
- failing to adequately train staff to handle patients such as Kelly Bernard Brinson;
- failing to provide adequate resuscitation; and
- failing to have adequate policies and procedures to handle patients such as Kelly Bernard Brinson.

## C.  Policies, Practices and Culpable Conduct

36. At all times relevant to this case each of the Medical Defendants and the Police Defendants knew that Mr. Brinson suffered from mental illness and that he had a serious medical need for treatment of that mental illness.

37. On January 20, 2010, Defendants acted pursuant to their custom and practice of using excessive force, including tasers, on mentally ill patients who are having a medically and psychologically induced disturbance.

38. On January 20, 2010, Defendants acted jointly pursuant to their policy of permitting law enforcement to use excessive force in clinical settings.

39. On January 20, 2010, the Medical Defendants and the Police Defendants acted jointly with respect to the development, training, and implementation of policies for the delivery of security services to the mental health unit at University Hospital.

40. These joint policies included but are not limited to a policy, practice, government enforced custom or prearranged plan of shifting clinical care to law enforcement personnel for the purpose of using force not otherwise permitted in a clinical setting and then shifting the patient back to clinical supervision after the force is used.

41. On January 20, 2010, Defendants acted pursuant to their policy of denying to mental health patients, solely because of their disabilities, treatment on an equal basis with other patients at University Hospital. Defendants discriminated against mental health patients by suspending clinical care and permitting law enforcement officers to use force totally inappropriate given the mental health needs of the patients, all due to the disability of the mentally ill patients.

42. The Medical Defendants and Defendant Eugene Ferrara established policies, practices and customs of failing to provide adequate security to patients such as Kelly Bernard Brinson who are suffering from a mental illness but experiencing agitation while at University Hospital.

43. The custom, practices and policies of the Medical Defendants and Defendant Ferrara were the moving force behind the constitutional deprivations suffered by Mr. Brinson while he was at the University Hospital, Inc., including the deprivations on January 20, 2010. These deprivations included his denial of adequate security and the use of excessive force on him while he was experiencing a mental health emergency.

44. At all times relevant to this case the Medical Defendants and Defendant Ferrara failed to train and supervise the Police Defendants, as well as other UC police officers, to properly

deescalate and safely bring under control mentally ill patients who are experiencing psychological distress.  That failure to train and supervise the police officers deployed at University Hospital Inc. staff shocks the conscience and was deliberately indifferent to patients such as Mr. Brinson who was experiencing a psychiatric emergency.

45. The Medical Defendants and Defendant Ferrara knew that tasers and handcuffs were repeatedly AND inappropriately used on mentally ill patients at University Hospital Inc. prior to the use of force on Mr. Brinson.  On at least seven occasions in the two year period prior to the use of force on Mr. Brinson, tasers and handcuffs had been used on psychiatric patients at University Hospital Inc.

46. The use of force on Mr. Kelly Bernard Brinson on January 20 including but not limited to the use of the taser shocks the conscience and constitutes excessive force.

47. All Defendants acted with deliberate indifference to the serious medical and security needs of Mr. Brinson.  Their conduct also constituted a substantial departure from accepted professional standards for treating patients such as Kelly Bernard Brinson.

48. All Defendants acted negligently, unreasonable, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious security and medical needs of Mr. Brinson.

49. The conduct of All Defendants shocks the conscience and violates the standards of decency expected in a civilized society.

**D.  Harm to Kelly Bernard Brinson and His Family**

50. As a direct and proximate result of Defendants' negligent, intentional, reckless, and/or indifferent actions, before his death, Kelly Bernard Brinson suffered severe emotional distress, anguish, humiliation, suffering, and extreme physical pain and distress.

51. Kelly Bernard Brinson died as a direct and proximate result of Defendant's negligent, intentional, reckless, and/or indifferent actions.   At this time only University Hospital, Inc. The Health Alliance, Defendants Liska, Moore and Vraciu are defendants in the wrongful death action.

52. As a further direct and proximate result of Kelly Bernard Brinson's wrongful death, his survivors and/or heirs have suffered permanent damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, as well as the loss of prospective inheritance.

53. As a further direct and proximate result of Kelly Bernard Brinson's wrongful death, his, survivors, next of kin and/or heirs have suffered permanent damages, including but not limited to, grief, depression, and severe emotional distress. They have incurred funeral bills, medical bills and treatment and will incur additional medical bills and treatment in the future.

## V. FIRST CAUSE OF ACTION – 42 U.S.C. §1983

54. Plaintiffs incorporate all of the aforementioned paragraphs, as if fully rewritten herein.

55. The Defendants have, under color of state law, deprived Kelly Bernard Brinson of rights, privileges and immunities secured by the Fourth and Fourteenth Amendment to the U.S. Constitution including but not limited to the right to be free from excessive force and to be free from deprivations of liberty that shock the conscience and the right to adequate security and medical care when seized by persons acting under color of law.  Defendants' use of force on Mr. Brinson represents a substantial departure from accepted professional standards.

56. The Medical Defendants and Defendant Eugene Ferrara failed to adequately train and supervise the University of Cincinnati police officers in the proper management and use of force on mentally ill patients in the hospital setting.

57. The rules, regulations, customs, policies and procedures of the Defendants regarding security and use of force against mentally ill patients were inadequate, unreasonable and deliberately indifferent and were the moving force behind the constitutional deprivations suffered by Kelly Bernard Brinson.

58. Although the Medical Defendants and Eugene Ferrara were on notice of the obvious need to train and supervise University Police in the area of use of force on mentally ill University Hospital Inc. patients, these defendants failed to adequately train and supervise the individual police officers in that regard and in so doing were deliberately indifferent to patients at risk of experiencing a mental health emergency such as Kelly Bernard Brinson.

## VI. SECOND CAUSE OF ACTION – WRONGFUL DEATH

59. Plaintiffs incorporate all of the aforementioned paragraphs, as if fully rewritten herein.

60. The actions of Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu caused the wrongful death of Kelly Bernard Brinson resulting in damages recoverable under R.C. §2125.02[1].

## VII. THIRD CAUSE OF ACTION – MALPRACTICE BY PHYSICIAN

61. Plaintiffs incorporate all of the aforementioned paragraphs, as if fully rewritten herein.

---

[1] Note that the wrongful death claim, medical malpractice claim, and the claim for discrimination under R.C. §4112.99 are filed at this time only against the medical defendants who are not employed by the State of Ohio. Pursuant to Ohio law, Plaintiffs will be taking measures to determine the immunity of medical Defendants Curell and Griffin and the Police Defendants before adding them as wrongful death defendants and/or state discrimination or malpractice defendants.

62. After Kelly Bernard Brinson was admitted to the Hospital, Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu failed to use reasonable care in providing services, care and treatment, including safe keeping during mental and physical health emergencies, to Kelly Bernard Brinson.  These Defendants breached their duty of care to Kelly Bernard Brinson as set out in detail above.

63. The conduct of Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu deviated from the standard of care in medical practice, all in violation of Ohio law. An Affidavit pursuant to Ohio Rule of Civil Procedure 10(D) has previously been filed.  Doc. 10-1.  The conduct of these Defendants was a proximate cause of Kelly Bernard Brinson's injuries suffered prior to death.  Further, the actions of Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu also caused the death of Kelly Bernard Brinson.

## VIII. FOURTH CAUSE OF ACTION – REHABILITATION ACT

64. Plaintiffs incorporate all of the aforementioned paragraphs, as if fully rewritten herein.

65.   As a result of his mental illness, Kelly Bernard Brinson was an individual with a disability within the meaning of the Rehabilitation Act.

66. In addition, Defendants Health Alliance, University Hospital and the Medical Defendants regarded Mr. Brinson as an individual with a disability.

67. In providing health care services at University Hospital to individuals for whom payments made through Medicare and/or Medicaid, The Health Alliance and University Hospital and

the other Medical Defendants conduct a "program or activity" receiving federal financial assistance within the meaning of the Rehabilitation Act.

68. As of January, 2010, Mr. Brinson was otherwise qualified to receive the mental health services offered by the Medical Defendants.

69. Each of the Medical Defendants denied Kelly Bernard Brinson the benefits of, and/or subjected Kelly Bernard Brinson to discrimination in the provision of the services or activities conducted by the Medical Defendant solely by reason of Kelly Bernard Brinson's disability.

70. Specifically, by permitting law enforcement to implement policies, practices and customs that resulted in the use of excessive force including a taser on Mr. Brinson in a mental health clinical setting, each of the Medical Defendants discriminated against Mr. Brinson in the delivery of mental health services solely because of his disability.

71. By denying Mr. Brinson the benefits of and/or subjecting him to discrimination in the provision the services of the program or activity it conducts solely because of his disability, each of the Medical Defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

## IX. FIFTH CAUSE OF ACTION – OHIO CIVIL RIGHTS ACT

72. Plaintiffs incorporate all of the aforementioned paragraphs, as if fully rewritten herein.

73.  The Health Alliance and University Hospital Inc. are places of public accommodation pursuant to O.R.C. §4112.01 (A) (9).

74. In January, 2010 Kelly Bernard Brinson was a person with a disability pursuant to O.R.C. §4112.01 (A) (1, 13).

75. Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu denied to Kelly Bernard Brinson the full enjoyment of the accommodations, advantages, facilities, and privileges of the University Hospital based on the disability of Mr. Brinson in violation of O.R.C. §4112.02 (G).

76. Defendants University Hospital, Inc. The Health Alliance, Liska, Moore and Vraciu are therefore liable for discrimination under O.R.C. §4112.99.

## X.  JURY DEMAND

77. Plaintiffs request a jury trial on all claims triable to a jury.

## XI. PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that this Court award them:

A.  Compensatory damages in an amount to be shown at trial;

B.  Punitive damages against Defendants in an amount to be shown at trial;

C.  Costs incurred in this action and reasonable attorney fees;

D.  Prejudgment interest; and

Such other and further relief as this Court may deem just and proper.

Respectfully submitted,


 s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein (0032053)
Jennifer L. Branch (0038893)
Attorney for Plaintiffs
432 Walnut Street, Suite400
Cincinnati, Ohio 45202
(513) 621-9100
(513) 345-5543
agerhardstein@gbfirm.com
jbranch@gbfirm.com
*Attorneys for Plaintiffs*

s/Donald C. Moore, Jr.
Donald C. Moore, Jr. (0003945)
Robert A. Herking (0080284)
The Moore Law Firm
1060 Nimitzview Drive, Suite 200
Cincinnati, Ohio 45230
(513) 232-2000
Fax: (513) 232-0700
*Attorneys for Plaintiffs*