UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY BRINSON II, et al., | : | Case No. 1: 10-cv-00424 |
| Plaintiffs, | : | Judge S. Arthur Spiegel |
| v. | : | |
| | : | **Response by Plaintiffs to Motions to** |
| UNIVERSITY HOSPITAL, et al., | : | **Dismiss By Law Enforcement** |
| | : | **Defendants (Docs. 62, 63); Request for** |
| Defendants. | : | **Limited Discovery Before Ruling on** |
| | : | **Motion** |

## I.  INTRODUCTION

This civil rights and wrongful death action challenges the tasing death of Kelly Bernard Brinson, a mentally ill patient at The University Hospital on January 20, 2010.  The lawsuit was filed on June 28, 2010.  The Defendants have vigorously litigated their rights under various pleading theories but have only recently served on the Plaintiffs a video of the actual use of force.  A copy of the video is attached for the Court's reference.  The video shows better than any parsing of the allegations in the complaint that Mr. Brinson was seated and cooperative when he first entered the seclusion room.  He was then overwhelmed by twenty-four clinical and law enforcement staff, tased, and died.[1]

This case, brought by Mr. Brinson's family, raises serious questions about the appropriate role of armed law enforcement officers in a civilian psychiatric ward.  Eight law enforcement Defendants have filed motions to dismiss (Docs. 62 and 63) based on qualified immunity and based on alleged deficiencies in the pleading.  Limited discovery is needed to provide the factual context for this Court to decide the motions for qualified immunity.  Plaintiffs are working with

---

[1] Courts give great weight to video testimony.  See, e.g., *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007)(video of high speed chase posted on Supreme Court website; Courts should view facts in light favorable to the nonmoving party "in the light depicted by the videotape").

1

defense counsel to secure that discovery. Plaintiffs specifically request the right to supplement this briefing when that discovery is completed and before this court rules on Docs. 62 and 63.

## II.  FACTS

On January 20, 2010, Mr. Brinson was a mentally ill civilian patient at The University Hospital in Cincinnati Ohio. Doc. 59, ¶ 11 – 14. Mr. Brinson suffered from paranoid schizophrenia, bi-polar disorder, delusions and related mental illnesses. *Id.* ¶ 11. On January 20, 2010, Mr. Brinson was very agitated. He was administered medication to address his problems and escorted to the seclusion room on his hospital ward. *Id.* ¶ 14. Defendant officers Proctor and Zacharias were two of the escorts for Mr. Brinson on the way to the seclusion room. *Id.* ¶ 16. Mr. Brinson resisted the efforts to put him in restraints and yelled that he was being treated as a slave. *Id.* ¶ 20. Defendant Zacharias tased Brinson and the other law enforcement officers wrestled with him and/or failed to stop others from tasing or wrestling with Brinson who suffered a cardiac arrest. *Id.* ¶ 21 – 31.

The attached video of the events in the seclusion room demonstrates that Mr. Brinson was initially compliant and seated on the bed. The room was bare except for a bed that was attached to the floor. Only when multiple people entered the room and were clearly talking at once did Mr. Brinson seek to escape into a corner away from them. Defendant law enforcement officers pointed their tasers at Mr. Brinson while he stood in the corner and another law enforcement officer moved toward him along the back wall.[2] The officers rushed Mr. Brinson, wrestled with him and tased him. They placed him on the bed and started applying restraints and he went into a full cardiac arrest.

---

[2] Plaintiffs have issued written discovery requests seeking the identity of each of the law enforcement officers.

Defendant Ferrara was not present during the use of force. He is the Chief of the University of Cincinnati Police. He coauthored a policy and procedure on "Aggressive Patients and Use of Security". *See* Declaration of Attorney Alphonse A. Gerhardstein, Exhibit A, "Aggressive Patients Policy", attached). This policy guided the other law enforcement officers in their interaction with Mr. Brinson. The policy blurred the roles of law enforcement and psychiatric staff in the clinical setting and caused the officers to respond to Mr. Brinson as if he were engaged in the same conduct on the street in free society. Moreover, the procedure, as implemented, authorized the use of the taser on physically infirm and/or physiologically and/or metabolically compromised patients such as Mr. Brinson who have been given psychotropic drugs. Deploying the taser in these scenarios is contrary to the warning on the Taser manufacturer product label. Doc. 59, ¶ 33. *See* Gerhardstein Decl., Ex. C, Taser Warning Label. Mr. Ferrara's policy caused numerous patients to be victims of excessive force prior to Mr. Brinson. *Id*. ¶ 45.

A "For Cause Survey" has been produced by University Hospital. *See* Gerhardstein Decl., Ex. B, attached. This report of the use of force on Mr. Brinson states that "several staff/police" were speaking to Mr. Brinson at once and that "[p]olice [were] not involved in education provided in October but have nonviolent intervention training when hired." The report states that the use of force policy is to be revised, that there will be "mandatory police force nonviolent crisis intervention training, staff education r/t contraindications/de-escalation assessment, restraint process, oversight r/t police use of tasers." No depositions have been taken but this may well be a list of some of the failures by defendants that resulted in Mr. Brinson's suffering and death and appears to confirm the allegations of the complaint.

### III.  ARGUMENT

**A.      *Iqbal* Standard for Reviewing Motions to Dismiss.**

The Supreme Court, in *Ashcroft v. Iqbal*, altered the pleading standard imposed upon all civil plaintiffs.  The Court overruled the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957), and established a "plausibility" standard of pleading.  To survive a motion to dismiss, a plaintiff must state a claim that is "plausible on its face," which requires that the complaint lay out more than "mere conclusory statements."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Providing bare assertions of illegal activity, without some "further factual enhancement," does not state a plausible claim.  *Id*.  However, Rule 8 of the Federal Rules of Civil Procedure remains in place.  That rule does not require "detailed factual allegations," but simply requires that the plaintiff produce more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 50 (6th Cir. 2009) *citing Bell-Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

This pleading standard does not necessarily require proof of specific facts, and the goal of pleading is still to "give the defendant fair notice of what the... claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Additionally, in ruling on a motion to dismiss, the reviewing court must still accept as true all factual allegations from the plaintiff's complaint."  *Id.*

All of this means that the plaintiff must provide sufficient factual matter to permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  The standard is not one of "probability," but requires more than a showing of a "mere possibility" that the defendant acted unlawfully.  *Id*.  The determination of whether a plaintiff has provided sufficient factual matter to meet this plausibility requirement is context-

specific and must be made in light of the reviewing courts "judicial experience and common sense." *Id*. at 1950.

The plaintiff in *Iqbal*, an Arab Muslim male, alleged invidious discrimination on the basis of race and national origin against former U.S. Attorney General John Ashcroft and Robert Mueller, then the Director of the FBI, for the conditions of his confinement in a federal penitentiary. *Iqbal*, 129 S.Ct. at 1942. The plaintiff alleged that he was mistreated solely because his Arab Muslim identity rendered him a detainee of "high interest" under the named defendant's policies and customs. *Id*. at 1944. The Supreme Court held that the plaintiff had failed to produce sufficient facts to show the necessary discriminatory state of mind on the part of the named defendants. *Id*. at 1952. The fact that the policy in question, which authorized the arrest and confinement of individuals suspected to be linked to terrorist organizations, had a disproportionate impact on Arab Muslims was insufficient to show that the policy was constructed and implemented by Ashcroft and Mueller solely for the purposes of discriminating against Arab Muslims. *Id.* at 1951. Thus, the elements of the claim, most importantly discriminatory intent, were a significant factor in the plaintiff's failure to adduce sufficient factual assertions to meet his burden.

As explained below, Fourth Amendment excessive force claims are assessed under an objective standard, not a subjective standard. Here, there is a sufficient factual basis to permit Plaintiffs' claims to proceed. The issue is not Defendants' intentions in using force on a mental patient within the ward. Rather, the inquiry must be whether the force was reasonable under the circumstances. As discussed below, Plaintiffs have provided factual assertions showing the use of force to be unreasonable. Further, Plaintiffs have produced additional facts beyond those alleged in their complaint which further demonstrate that Officers Zacharias, Proctor, Weibel,

5

Reeme, Sprague, Kidd and McDaniel are appropriate defendants, and that their actions were unreasonable under the circumstances. Finally, Plaintiffs have linked the actions of these officers to a pattern of excessive force at the Hospital and to policies and training established by Defendant Ferrara, establishing his personal involvement in the constitutional violations. Plaintiffs have provided much more than a "threadbare recital" of the elements of a Fourth Amendment violation. Plaintiffs have provided facts giving the court an ample basis to find it plausible that Mr. Brinson's rights were violated; to hold that the Defendants' Motions to Dismiss should be denied; and to permit the Plaintiffs to proceed with discovery.

**B.      Plaintiffs have Properly Alleged a Violation of the Fourth Amendment; Qualified Immunity Is Not Appropriate.**

   **1.      Standard for Determining Excessive Force.**

Section 1983, Title 42 of the U.S. Code, permits any individual that is deprived of one of his federally protected rights by a state official to bring a civil claim for damages. To establish such a claim, a plaintiff must show that: (1) he was deprived of a right secured by the Constitution or federal law; and (2) the Defendants, acting under the color of law, caused the deprivation. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-157 (1978). However, officers are entitled to assert the defense of qualified immunity if the right they have violated was not clearly established and not something a reasonable officer would have known at the time of the violation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the Sixth Circuit, once qualified immunity has been pled as an affirmative defense, the burden shifts to the plaintiff to demonstrate that the right was clearly established at the time of the disputed conduct. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

Once the defense of qualified immunity has been asserted, there is generally a two-step analysis to determine if the defendant is entitled to the defense. *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001), *overruled in part by Pearson v. Callahan*, 129 S.Ct. 808 (2009). The first question

6

to ask is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201.  Then once it is established that the officer's conduct violated some federally protected right, a court should proceed to ask "whether the right was clearly established." *Id.*  Although this sequential analysis is not mandatory in all cases, it remains beneficial because "it often may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." *Pearson*, 129 S.Ct. at 818, *citing Lyons v. Xenia*, 417 F.3d 565, 581 (6th Cir. 2005) (Sutton, J., concurring).

  A seizure that is effected through the use of excessive force is necessarily "unreasonable." *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865 (1989).  In that case a diabetic entered a convenience store and then hurried out when he saw that the line was too long to allow him to buy orange juice quickly.  A police officer thought his hurried departure was suspicious and followed the Mr. Graham and made an investigatory stop of his car.  Police caused Mr. Graham injuries as they detained him.  The Supreme Court reversed and remanded the directed verdict that had been granted to the police.  The Supreme Court identified several factors to assist the trier of fact in determining whether the force used was reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The Supreme Court has now further clarified, however, that the core inquiry is whether the force used was "objectively reasonable." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007)

  In *Scott,* the Court held that it was not unreasonable for an officer to terminate a high speed chase by attempting a "Precision Intervention Technique (PIT)."  A PIT maneuver is supposed to cause the suspect vehicle to spin to a stop. Unfortunately when defendant Officer Scott applied his front bumper to plaintiff Harris's rear bumper, Harris's car spun out of control,

7

went down an embankment and Harris was rendered a paraplegic.  Harris argued that the force was unreasonable given the fact that he was merely wanted for traffic violations.  The Supreme Court stated that the underlying crime was only one fact in the equation.  The Court returned to balancing and noted that,

> In determining the reasonableness of the manner in which a seizure is effected, "[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." [Citations omitted]

*Id*. 127 S. Ct. at 1778.  The Court proceeded to balance the interests in *Scott*, stating, "we must consider the risk of bodily harm that Scott's actions posed to respondent in light of the threat to the public that Scott was trying to eliminate."  *Id*.  Finally, the Court stated that it is useful to weigh the relative culpability of the parties,

> We think it appropriate in this process to take into account not only the number of lives at risk, but also their relative culpability. It was respondent, after all, who intentionally placed himself and the public in danger by unlawfully engaging in the reckless, high-speed flight that ultimately produced the choice between two evils that Scott confronted. Multiple police cars, with blue lights flashing and sirens blaring, had been chasing respondent for nearly 10 miles, but he ignored their warning to stop. By contrast, those who might have been harmed had Scott not taken the action he did were entirely innocent. We have little difficulty in concluding it was reasonable for Scott to take the action that he did.

*Id.*

The Sixth Circuit, interpreting *Scott*, has added additional factors that may be relevant when assessing whether force is reasonable, including the "size and stature of the parties involved."  *Davenport v. Causey,* 521 F.3d 544, 551 (6th Cir. 2008)(citing cases).  Through all of these decisions the focus remains on determining reasonableness.  There is no "magical on/off switch" for discovering when an officer's conduct is excessive. *Id.*  Instead, "judges are to look to the 'factual and practical considerations of everyday life on which reasonable and prudent

men, not legal technicians, act.'" *Id*. (citing *Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795 (2003)).

In the instant case Plaintiff Kelly Brinson was a civilly committed mental patient. He was not a criminal. He was escorted to the seclusion room when he was particularly delusional due to his mental illness. Mr. Brinson was "experiencing psychotic agitation" at the time of the use of force. Doc. 59, ¶28. As set out more fully below, it was unreasonable for law enforcement to treat Mr. Brinson as if he was a civilian on the street and it was excessive to rush him, wrestle him and tase him inside the seclusion room while he was suffering from a mental health emergency.

### 2. Defendants Zacharias, Proctor, Weibel, Reeme, Sprague, Kidd and McDaniel are Not Entitled to Qualified Immunity.

Defendants Zacharias, Proctor, Weibel, Reeme, Sprague, Kidd and McDaniel violated the right of Mr. Brinson to be free of excessive force and that right was clearly established on January 20, 2010. The first *Graham* factor is the severity of the crime. Plaintiffs assert that a psychotic patient in the throes of a mental health emergency is not a criminal. Any flailing he may have done in the hall on the way to the seclusion room should not have been treated as an assault. *See* Doc. 62, p. 11, n. 55, claiming that Brinson "committed three separate assaults." This is an important fact. Determining the precise conduct of Mr. Brinson before he entered the seclusion room is one topic of discovery that should be pursued before a ruling on qualified immunity. Alleged assault notwithstanding, Mr. Brinson was in the seclusion room for treatment – to permit his medications to take effect and end his delusions. If the law enforcement officers entered the seclusion room to arrest him for delusion-driven actions in the hallway, that is also unreasonable. Thus, the first Graham factor, seriousness of the crime is very fact bound

depending on Mr. Brinson's mental state and the actual conduct of the plaintiff and defendants in the corridor.

The second *Graham* factor is whether Mr. Brinson posed a threat to the officer or to the public. In fact he was in the seclusion room to protect himself. It is evident on the video that they should simply have left the room and closed the door. The law enforcement defendants argue that Mr. Brinson was not complying with the law enforcement and "University Hospital employees' directives *to allow them to place him in restraints*…" Doc. 62 at 12 (emphasis added). But law enforcement officers are not permitted to use force simply to support clinical efforts. Indeed, even the policy co-written by Defendant Ferrara prohibits law enforcement from using force as part of a "health care intervention." See "Aggressive Patients" Policy at Section 4E (Gerhardstein Decl., Ex. A, p.3). Thus the use of force to help place Brinson in restraints does not qualify under *Graham*.

The third *Graham* factor looks at whether the force was used to prevent an escape. That was clearly not the case in this instance.

As set out above, reasonable force is determined in part by balancing the government interest against the intrusion on the person targeted for force. In this case Mr. Brinson was delusional. He was in the seclusion room and medication had been allegedly administered and needed time to work. He was an innocent, sick, tragic figure. The government has no interest in wrestling him down and tasing him inside the seclusion room. As plausibly alleged in the complaint and evident from the video, the officers continued to escalate the encounter, talked over each other, pointed terrifying tasers at the delusional patient, and rushed him, wrestled with him and then tased him without serving any government interest. Those who did not personally use excessive force failed to protect Mr. Brinson from those who did use excessive force.

The precise mental state of Mr. Brinson and the actions of law enforcement and clinical staff will all be more carefully determined after depositions of those in the room and those who were treating Mr. Brinson.  But the record and plausible allegations to date demonstrate conduct that violated clearly established law.  See, *Russo v. City of Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) (denying summary judgment to defendant officers while taking into account fact decedent was known to be mentally ill for purposes of excessive force analysis); *Landis v. Baker*, 297 Fed. Appx. 453 (6th Cir. 2008)(Denying summary judgment on excessive force claim to defendant officers who held mentally ill individual down in water, killing him, and noting "different tactics should be employed against an unarmed, emotionally distraught individual who is resisting arrest or creating disturbance than would be used against an armed and dangerous criminal who has recently committed a serious offense"); *Griffith v. Coburn*, 473 F.3d 650 (6th Cir. 2007) (Denying qualified immunity on excessive force claim to defendant officer that used a neck restraint on mentally ill decedent and stating "[t]here is one other relevant [Fourth Amendment] factor in this case: the record establishes that the officers who came to the Partee residence knew before their arrival that Arthur Partee was experiencing some sort of mental or emotional difficulty sufficient to cause his mother to seek help from the police department."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004) (Upholding verdict against defendant officers and stating "[i]t cannot be forgotten that the police were confronting an individual whom they knew to be mentally ill or retarded, even though the Officers may not have known the full extent of Champion's autism and his unresponsiveness.  The diminished capacity of an unarmed detainee must be taken into account when assessing the amount of force exerted."); *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 775 (6th Cir. 2004)("We acknowledge that a suspect's apparent mental state is one of the "facts and circumstances of [the] particular case," that should

be considered in weighing an excessive force claim.")(internal citations omitted); *Ali v. City of Louisville*, 395 F.Supp.2d 527 (W.D. Ky. 2005)("Whether the person is mentally ill is a factor to be considered in the reasonableness of force employed."); *Swans v. City of Lansing*, 65 F.Supp.2d 625 (W.D. Mich. 1998)(taking into account decedent was mentally ill and in need of psychological treatment when upholding jury verdict for excessive force against defendant officers and against city for failure to train); *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003)(Denying qualified immunity to defendant officers that used excessive force in restraining mentally ill individual and stating "a detainee's mental illness must be reflected in any assessment of the government's interest in the use of force"); *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001)(Denying qualified immunity to defendant officer that shot unarmed, mentally ill man with less than lethal beanbag and stating that "where it is or should be apparent to the officers that the individual involved is emotionally disturbed, that is a factor that must be considered in determining ... the reasonableness of the force employed.").

The law on bystander liability, which permits §1983 liability to be imposed on individuals that fail to stop excessive uses of force by others, was also clearly established in January 2010. *Durham v. Nu'Man*, 97 F.3d 862 (6th Cir. 1996)(reversing grant of qualified immunity to defendant security officer and nurse in state mental health hospital for failure to protect plaintiff mental patient from beating by another officer*); McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(holding that a corrections officer that watched the unlawful beating of plaintiff could be held liable under §1983 without actively participating in the beating); *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982)(holding that officers that stood by while plaintiff was beaten by other officers could be held liable pursuant to §1983); *Scott v. City of Dayton*, No. C-3-04-420, 2007 WL 1875642 (S.D. Ohio 2007)(unpublished)(denying summary judgment to

12

defendant police officer that failed to prevent use excessive force by another officer on plaintiff); *DeCosta v. Medina County*, No. 1:04CV1118, 2006 WL 1474000 (N.D. Ohio 2006) (unpublished)(denying summary judgment to defendant correctional officers for failing to protect plaintiff from sexual abuse by other correctional officer). *See also Davis v. Rennie*, 264 F.3d 86 (1st Cir. 2001)(upholding jury verdict against nurse, who ordered restraint of involuntarily committed mental patient, for failing to prevent beating of mental patient by mental health workers).

        **3.**     **Defendant Ferrara is not entitled to Qualified Immunity.**

Defendant Ferrara is the University of Cincinnati Chief of Police. He has acted jointly with the University Hospital to create the rules of engagement for UC police officers called to the hospital to assist with aggressive and mentally ill patients. *See* Gerhardstein Decl., Ex. A. Pursuant to his policy and procedure officers are permitted to use weapons on patients in the clinical setting. The taser is deployed against patients like Mr. Brinson who are physically infirm and/or physiologically or metabolically compromised due to their mental illness and/or due to psychotropic drugs administered in the clinical setting. Deployment in these circumstances is contrary to the warnings on the Taser product warning label. Doc. 60. ¶32-33; Gerhardstein Decl. Ex. C. This policy has resulted in at least seven instances of excessive force against University patients prior to Mr. Brinson. Doc. 60 ¶45. Thus, his procedure and the training he provides his officers in implementing the procedure is a proximate cause of the injuries suffered when the officers applied excessive force to Mr. Brinson. The facts in the complaint therefore support the allegation that Defendant Ferrara was deliberately indifferent to the rights of mentally ill patients including Mr. Brinson. *Id.* at ¶¶44, 58.

A law enforcement officer in a supervisory position can be sued individually under §1983 for his actions which proximately cause injuries to persons harmed by line officers. The supervisor need not be personally present at the time of the violation as long as the supervisor's conduct was a cause of that violation. This is not an application of respondeat superior or a subterfuge for suing a supervisor in his official capacity. It is accepted §1983 jurisprudence. The key is to show that the supervisor "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Michigan Dept of Correction*, 69 F.3d 76, 81 (6th Cir. 1995)(warden liable for system where vulnerable inmate assigned to setting where attack likely to occur). *See, e.g.*, *Wright v. Leis*, 2009 WL 1853752 (6th Cir. 2009)(failure to train subordinates); *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001)(supervisor liable based on retention of violent guard who used force on inmate); *Merriweather v. Zamora*, 569 F.3d 307, 318 (6th Cir. 2009)(no qualified immunity for supervisors who encouraged atmosphere of disregard for proper mail-handling procedures for prisoner mail).

This Court recently denied summary judgment to a County Sheriff in a case in which a patient committed suicide. In that case the medical policy instituted by the sheriff permitted a social worker to make medical determinations regarding medication outside her scope of practice resulting in the denial of medication to the decedent and contributing to his suffering and death. *McCullum v. Tepe*, U.S.D.C., S.D.OH. Case No. 1:08-cv-387 (Doc. 106, March 28, 2011, ruling on summary judgment). The principles that support denial of summary judgment to the supervisor in *McCullum* apply with equal force to the Chief of Police in the instant case. The decision in *Iqbal* does not require direct personal participation in the incident so long as causation principles are satisfied. This point was thoroughly discussed in *Dodds v. Richardson*,

14

2010 WL 3064002 (10th Cir. 2010)(supervisor who established policy causing over-detention not dismissed based on *Iqbal*). *See also Anderson v. City of Blue Island*, 2010 WL 1710761 (N.D. Ill. 2010)(denying motion to dismiss claim that defendant was deliberately indifferent in failing to train officers regarding mentally ill despite frequency of contact with mentally ill citizens); *Buben v. City of Lone Tree*, 2010 WL 3894185 (D. Colo. 2010)(deny motion to dismiss claim based on failure to train officers in proper taser deployment with mentally ill citizens); *Russo v. City of Cincinnati*, 953 F.2d 1056 (6th Cir. 1992)(affirm judgment permitting claim of failure to train officers who used excessive force including taser when dealing with mentally ill citizens); *Abdi v. Karnes*, 556 F.Supp. 2d 804(S.D. OH. 2008)(deny summary judgment on claim of failing to train officers in arresting mentally ill persons); *Estate of Harvey v. Jones*, 2006 WL 909980 (W.D. Wash. 2006)(deny summary judgment on claim of failure to train officers to deal with mentally ill citizens); *Keeney v. City of New London*, 196 F.Supp.2d 190, 201 (D. Conn. 2002)(same).

**C.     The Court may properly consider the Video, Policy on Aggressive Patients and For Cause Survey in reviewing the Motion to Dismiss.**

The video, the policy on aggressive patients, and the for cause survey attached to this memorandum, may properly be considered by the Court in reviewing the Defendants' Motions to Dismiss. These pieces of evidence need not be excluded, nor must the motion be converted to one for summary judgment in order for the evidence to be utilized. Because the evidence supports the allegations in the complaint and does not add information outside the scope of the complaint, it may properly be considered. Generally, a court ruling on a motion to dismiss for failure to state a claim must limit its review to the pleadings. *Johnson v. Bredesen*, 356 Fed.Appx. 781, 783 (6th Cir. 2009). Additionally, where evidence or documents outside the pleadings are admitted by the court, the motion is generally converted to one for summary

15

judgment. *Id*. But there are exceptions and the use of *Iqbal* in motions to dismiss certainly encourages plaintiffs to submit material that tends to support the plausible allegations of a complaint.

The court may properly consider documents referred to in the complaint if they are central to the claims asserted. *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 FN2 (6th Cir. 2008) *citing Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). The court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) *citing Nieman v. NLO Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). While other documents and evidence may be considered by the court, the plaintiff is under no obligation to attach them to the complaint at the time of filing. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Where extrinsic materials merely "fill in the contours and details of a complaint," they "add nothing new and may be considered" without converting the motion to one for summary judgment. *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001) *citing Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)("when affidavits do 'nothing more than verify the complaint" they are not outside the pleadings). The defendants in *Yeary* filed a motion to dismiss the plaintiff's sexual harassment employment claim. The plaintiff responded by submitting his own affidavit and one of a co-worker in support of his complaint. *Yeary*, 107 F.3d at 444. The court held that these affidavits merely "filled in the contours" of the complaint and could be considered. *Id*. at 445. This legal principle has survived *Iqbal*. *See Powertrain Productions Systems, L.L.C. v. Nemark of Canada Corp.*, 2009 WL 3757106 at *2 (E.D. Mich. 2009) *citing Yeary*, 107 F.3d at 445; *see also Garrison v. Michigan Dept. of Corrections*, 2009

16

WL 4800623 (E.D. Mich. 2009); *Hogan v. Kokosing Const. Co., Inc.*, 2009 WL 3124317 (S.D. Ohio 2009).

Just as in *Yeary*, the evidence here merely supports and clarifies the factual allegations already presented in Plaintiffs' complaint. The video of the events of January 20, 2010 is in sync with the allegations in Plaintiffs' complaint. This evidence does not bring additional matters before the court, but rather merely verify Plaintiffs' assertions. Therefore, the Court may properly consider this evidence in determining whether to grant or deny Defendants' Motion to Dismiss. It is especially important that these assertions be considered in light of the increased importance on sufficient factual allegations required by *Iqbal*. Because the Supreme Court has demanded a sufficient factual showing to make a claim plausible, these additional facts, while not necessary to permit Plaintiff's claim to survive, are useful in the court's review and should be considered.

**D.      Limited Discovery against the Law Enforcement Defendants Should Be Permitted.**

Some documentation and the video have been secured. But given the applicable legal principles set out above it is clear that selected discovery should be permitted that will clarify the factual context. Plaintiffs of course prefer full discovery of all relevant facts but recognize that that may not be possible at this point. Specifically plaintiffs seek the following:

1. Law Enforcement Defendants should promptly produce personnel files and complete training records (including training materials) of all Law Enforcement Defendants. This is not an intrusion since these are public records in any event.

2. Law Enforcement Defendants should promptly produce all records related to the "Aggressive Patient" policy and procedure including all drafts and versions and all signed and unsigned copies. Again, these are public records.

3. Law Enforcement Defendants should promptly produce all records related to the previous incidents of uses of force cited by the Ohio Department of Mental Health.  These are also public records.

4. Law Enforcement Defendants Ferrara, Zacharias and McDaniel should submit to deposition at earliest practicable date.  Topics include the following that will be very helpful in determining facts relevant to Qualified Immunity: knowledge of rules of engagement in clinical setting, training on rules of engagement in clinical setting, knowledge of Plaintiff Kelly Brinson mental and medication status, events that transpired in the hallway and in the seclusion room, basis for use of force and extent of use of force.

This discreet discovery will permit the parties to address the constitutional claims in the context of the facts that are relevant to the issues of qualified immunity and supervisory liability. *See generally*, *O'Neil v. Kiser*, Civil No. 03-CV-10001-BC, 2005 WL 579719, at *3, *4 (E.D. Mich. Mar. 8, 2005)("It is true that the purpose of the qualified immunity defense is to protect government officials from 'the broad-ranging discovery that can be peculiarly disruptive of effective government'… However, the issue of qualified immunity requires an exploration of the contours of the constitutional rights in issue in the context of the specific facts of the case. . . Those questions, in turn, will involve exploration of 'the circumstances with which the official is confronted, and often on the information that he possesses.' The critical inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.' All the dimensions of that 'situation,' therefore, are the proper subject of discovery. . .The matter has been referred to the magistrate judge for pretrial case management, where it soon will return. The Court has no doubt that the magistrate judge is more than equal to the task of managing discovery within the proper framework as outlined by circuit precedent"); *Hagan v. City of*

*Cleveland*, Case No. 1:06CV2507, 2007 WL 893825, at **6-8 (N.D. Ohio Mar. 22, 2007)(discovery pending qualified immunity motion limited to justification for use of force).

A similar request for limited discovery was recently granted by this Court in *Logan v. Sycamore Community School Board of Education*, USDC, SD OH, Case No. 1:09-cv-00885 (Order, June 16, 2010)(Doc. 45).

## IV. CONCLUSION

Plaintiff respectfully requests that the Motions to Dismiss be denied; the requests for qualified immunity should be denied; and that limited discovery should be permitted before ruling on said motions.

Respectfully submitted,

| | |
|---|---|
| BY: s/ Alphonse A. Gerhardstein | s/Donald C. Moore, Jr. |
| Alphonse A. Gerhardstein (0032053) | Donald C. Moore, Jr. (0003945) |
| Jennifer L. Branch (0038893) | Robert A. Herking (0080284) |
| Attorney for Plaintiffs | The Moore Law Firm |
| 432 Walnut Street, Suite400 | 1060 Nimitzview Drive, Suite 200 |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45230 |
| (513) 621-9100 | (513) 232-2000 |
| (513) 345-5543 | Fax: (513) 232-0700 |
| agerhardstein@gbfirm.com | *Attorneys for Plaintiffs* |
| jbranch@gbfirm.com | |
| *Attorneys for Plaintiffs* | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing pleading and the Notice

of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

s/ Alphonse A. Gerhardstein
Attorney for Plaintiff