UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KELLY BRINSON II Individually :
and as Administrator of the    :
ESTATE OF KELLY BERNARD        :
BRINSON, DECEASED,             :
                               :    NO. 1:10-CV-00424
          Plaintiff,           :
                               :
     v.                        :    **OPINION & ORDER**
                               :
UNIVERSITY HOSPITAL, INC.,     :
et al.,                        :
                               :
          Defendants.          :

        This matter is before the Court on Defendants' University

Hositpal, Inc., The Health Alliance of Greater Cincinnati, Lee Ann

Liska, Jennifer Moore, M.D., and John Vraciu, D.O. ("Medical

Defendants")[1] Partial Motion to Dismiss (doc. 65), Plaintiff Kelly

Brinson II's Response to Partial Motion to Dismiss (doc. 71), and

Defendants' Reply in Support of their Partial Motion to Dismiss

(doc. 74). For the following reasons, the Court DENIES the Medical

Defendants' Partial Motion to Dismiss (doc. 65).

**I.    Background**

        On January 17, 2010, the decedent, Kelly Bernard Brinson,

voluntarily submitted himself to the University Hospital for

medical help (doc. 59). He was suffering from hand pain, paranoid

schizophrenia, bi-polar disorder, delusions, and other related

---

[1]The other Defendants in this case are Eugene Ferrara, Mark
Zacharias, Eric Weibel, Jason Reeme, Kelli McDaniel, Adrianne Sprague,
Travis Proctor, and Phillip Kidd, the Law Enforcement Defendants.

mental illnesses (Id.). At that time, he was admitted to the mental health unit on the eighth floor of University Hospital (Id.).

On January 20, 2010, Mr. Brinson became agitated and was given medication pursuant to Defendant Dr. Griffin's orders (Id.). However, Mr. Brinson remained agitated and was directed to a seclusion room by Defendants Moore and Vraciu (Id.). Several Defendants, including Vraciu, Proctor and Zacharias escorted Mr. Brinson to the seclusion room(Id.). Once he was in the seclusion room, Mr. Brinson positioned himself behind the bed (Id.). At that time, Law Enforcement Defendants Zacharias, Weibel, Reeme, McDaniel, Sprague, Proctor, and Kidd were in the seclusion room, along with several of the named Medical Defendants (Id.).

Mr. Brinson, an African American, was very agitated and resistant to the medical staff's efforts to place him in restraints (Id.). Mr. Brinson repeatedly yelled that slavery was over and repeatedly pleaded not to be shackled and treated like a slave (Id.). Law Enforcement Defendant Zacharias threatened Mr. Brinson with his taser and discharged his taser three times (Id.). Plaintiff also alleges that Defendant Reeme directed Defendant Zacharias to deploy the taser against Mr. Brinson (Id.). Plaintiff further alleges that Defendant McDaniel threatened Mr. Brinson with her taser (Id.). Plaintiff alleges that Defendants Weibel and Proctor physically rushed Mr. Brinson, lunged at him, and physically attempted to wrestle him to the floor (Id.). Other Law

Enforcement Defendants, including Zacharias, McDaniel, Sprague, Reeme, and Kidd, also wrestled with Mr. Brinson (<u>Id</u>.).

Both while he was in the hallway and in the seclusion room, Mr. Brisnon experienced psychotic agitation (<u>Id</u>.). Eventually, after deploying their tasers, Law Enforcement Defendants Weibel, Proctor, Zacharias, McDaniel, Sprague, Reeme, and Kidd placed Mr. Brinson on the bed and applied four point restraints and an additional strap to his body (<u>Id</u>.). Shortly after being placed on the bed, Mr. Brinson stopped breathing and became unresponsive (<u>Id</u>.). A code was called, and his heart function was restored (<u>Id</u>.). Mr. Brinson died on January 23, 2010 (<u>Id</u>.).

At the time of his tasing, Mr. Brinson was heavily drugged with medications administered by the Medical Defendants, which Plaintiff alleges made him infirm, as well as physiologically and metabolically compromised (<u>Id</u>.). At the time the taser was used, Taser International, the manufacturer, had issued a product warning known to the Police Defendants indicating that the device can cause "serious injury or death. . . especially at risk are persons. . . who are physically infirm" (<u>Id</u>.). The label also warns of dangers to "physiologically or metabolically compromised persons" and of the dangers to "sensitive body parts" including the "chest or breast" (<u>Id</u>.).

Plaintiff Kelly Brinson II, individually and as administrator of the estate of Kelly Bernard Brinson, deceased,

3

filed a complaint in this matter alleging (1) deprivation of his rights secured by the Constitution, in violation of 42 U.S.C. § 1983; (2)wrongful death resulting in damages recoverable under R.C. §2125.02; (3) malpractice against the Medical Defendants; (4) violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 749; and (5) violation of the Ohio Civil Rights Act, O.R.C. § 4112.02 (G) (<u>Id</u>.).

## II.  The Applicable Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Westlake v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976); <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Courie v. Alcoa Wheel & Forged Products</u>, 577 F.3d 625, 629-30 (6th Cir. 2009), <u>quoting</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009), <u>citing</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

4

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly, Pleading Rules, and the Regulation of Court Access*, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co.,

745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969).  The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

## III. Medical Defendants' Partial Motion to Dismiss

### A. The Parties' Arguments

The Medical Defendants first contend that the Plaintiff's claims under the Rehabilitation Act of 1973 against Defendants Lee Ann Liska, Jennifer Moore, M.D., and John Variciu, D.O. (the "Employee Defendants") should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Employee Defendants are not an "entity" that receives federal financial assistance under the Rehabilitation Act (doc. 65). In Plaintiff's Response, Plaintiff agreed that the Employee Defendants are entitled to dismissal on the Rehabilitation Act claim (doc. 71).

Second, the Medical Defendants contend that they are entitled to dismissal pursuant to Rule 12(b)(6) as to the Plaintiff's first cause of action, the claim for excessive force under 42 U.S.C. § 1983 (doc. 65). Defendants contend that this claim should be dismissed for failure to state a claim upon which relief can be granted because University Hospital and The Health Alliance are not state actors, and thus Plaintiff cannot maintain a § 1983 claim against them (Id.). Medical Defendants note that in order to maintain a claim under 42 U.S.C. § 1983, the Plaintiff has the burden of asserting that the Defendants were acting (1) under the color of state law; and (2) were state actors (Id., citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). To determine whether the Lugar factors are met, the Sixth Circuit applies three tests: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test (doc. 65, citing Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2000)). Defendants contend that the Plaintiff failed to set forth facts sufficient to claim that the Medical Defendants satisfied any of the three Lugar tests(doc. 65).

Plaintiff contends that the Defendants are state actors pursuant to the joint participant or nexus test (doc. 71). As to this claim, the Defendants argue that the Plaintiff failed to set forth factual allegations to show that there was a "sufficiently close nexus between the state and the challenged action of the

regulated entity so that the action of the latter may be fairly treated as that of the state itself" (doc. 65, <u>citing Lansing</u>, 202 F.2d at 830). Defendants contend that they cannot be transformed into state actors because they contacted the Law Enforcement Defendants to assist with Mr. Brinson (doc. 65). The Medical Defendants further contend that once the Police Defendants decided to take Mr. Brinson into their custody, their actions were outside of the Medical Defendants' control (<u>Id</u>.). The Medical Defendants note that the utilization of public services such as law enforcement, by private actors, does not convert private action into state action (<u>Id</u>., <u>citing</u> <u>Lansing</u>, 202 F.3d at 831). Defendants contend that the Plaintiff's complaint fails to point to any actual policy, practice, or custom used by the Medical Defendants to support its claim that the Medical Defendants acted jointly with the Police Defendants (doc. 65).

    In response, Plaintiff argues that the Defendants are state actors pursuant to the joint participant or nexus test, which tests whether there is a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself" (doc. 71, <u>citing</u> <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 351 (1974)). Plaintiff contends that there was more than the request for assistance as the court found in <u>Lansing</u>, and suggests that the case at bar is more akin to <u>Wickersham</u>, where the

8

court emphasized the fact that there was a prearranged role of the police in effectuating the policies of the private parties (doc. 71., <u>citing</u> <u>Lansing</u>, 202 F.3d at 821; <u>Wickersham v. City of Columbia</u>, 481 F.3d 591 (8th Cir. 2007)). Plaintiff alleges that under this standard, Plaintiff's plausible allegations meet the standard for showing a sufficiently close relationship between the Medical Defendants and the state, pointing to the "Aggressive Patients and Use of Security Policy" (Policy) that was jointly developed by Defendants Liska, a private hospital employee, and Ferrara, a public police chief (doc. 71). Plaintiff further supports this conclusion by alleging that the Medical Defendants acted jointly with the state to train hospital staff and University of Cincinnati Police Department officers regarding the implementation of these policies, practices, and customs (<u>Id</u>.).

In their reply, Medical Defendants contend that they are entitled to dismissal because the Plaintiff's complaint did not include a factual basis for his allegations that Defendants acted jointly and entered into a conspiracy with the Police Defendants specifically to violate Mr. Brinson's constitutional rights (doc. 74). Defendants also contend that the Court may not consider the "For Cause Survey" relied on in Plaintiff's Memorandum in Opposition because it is inadmissible as a subsequent remedial measure under Rule 407 of the Federal Rules of Evidence (<u>Id</u>.). Furthermore, Medical Defendants contend that the Policy referred to

in the Plaintiff's complaint does not provide the factual allegations necessary for Plaintiff to support his § 1983 claim (<u>Id</u>.).

**B. Discussion**

To survive a motion to dismiss, a plaintiff must state a claim which is "plausible on its face," and requires that the complaint lay out more than "mere conclusory statements" (doc. 71, <u>citing</u> <u>Iqbal</u>, 129 S.Ct. 1949). That rule does not require "detailed factual allegations," but requires that the plaintiff produce more than a conclusory accusation (doc. 71, <u>citing</u> <u>Howard v. City of Girard, Ohio</u>, 346 Fed. Appx. 49, 50 (6th Cir. 2009)). For the following reasons, the Court finds that Plaintiff has pled facts sufficient to meet this standard and survive the Defendants' Motion to Dismiss.

To bring a § 1983 action, a plaintiff must establish that a defendant, acting under color of law, deprived the plaintiff of rights secured by the Constitution. <u>See generally</u> <u>Flagg Bros., Inc. V. Brooks</u>, 436 U.S. 149, 155 (1978). Private parties can be considered state actors for the purposes of § 1983 liability when the private party's actions may be fairly attributable to the state. <u>See</u> <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982). The Supreme Court has developed three tests for determining the existence of state action: (1) the public function test, (2) the state compulsion test, (3) the symbiotic relationship or nexus

10

test. See <u>Lindsey v. Detroit Entertainment, LLC</u>, 484 F.3d 824, 828 (6th Cir. 2007). Here, the Plaintiff contends that the Medical Defendants could be state actors pursuant to the symbiotic relationship or nexus test (doc. 71). The ultimate inquiry under this test is whether "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 351 (1974). The Sixth Circuit has noted that such an inquiry must consider the facts of a particular case or circumstance, as the cases establish no clear standard for identifying a sufficiently close nexus. See <u>Lansing</u>, 202 F.3d at 830.

Taking the Plaintiff's allegations as true, Plaintiff's allegations meet the standard at the pleading stage for plausibly showing a sufficiently close relationship between Medical Defendants and the State such that the Medical Defendants could be state actors for purposes of § 1983. Plaintiff contends that the University Hospital's "Aggressive Patients and Use of Security Policy" was developed jointly by Defendants Lee Ann Liska, a private hospital employee, and Eugene Ferrara, Director of Public Safety for the University of Cincinnati (doc. 71; doc. 66). Both Defendant Liska and Defendant Ferrara are listed on the document, and the caption for "Responsibility:" reads "Psychiatry Services and UC Police/Security" (doc. 66). Plaintiff contends that this

11

jointly developed policy governs the role of both the clinical staff and law enforcement, thus severely blurring the line between the role of law enforcement and psychiatric staff in the mental health unit at University Hospital (doc. 71, <u>citing</u> doc. 66).

The Plaintiff's allegations to this effect are plausible in light of the Policy attached as Exhibit A to the Plaintiff's Response in Opposition to the Motion to Dismiss (doc. 66). First, the section entitled "Policy" reads: "The University of Cincinnati Police Department is responsible for providing Security and Police intervention and protection within TUH [The University Hospital]" (<u>Id</u>.). Next, the policy sets out a procedure for screening aggressive patients, which explains that "nursing and physician assessments will evaluate for risk factors that would place the patient at higher risk for injury should a Device of Force ever be deployed by a Peace Officer," indicating that the policy itself anticipated the use of Peace Officers in conjunction with hospital treatment (<u>Id</u>.). Additionally, Section 4 of the policy inserts police into the hospital setting, upon an assessment by the Registered Nurse on duty that there is a need to call for Peace Officer assistance when managing an aggressive patient (<u>Id</u>.). Upon such assessment by the nurse, the Policy instructs that the nurse delegate Peace Officers upon their arrival, that Peace Officers will initially work under the clinical direction of the nurse to intervene with the aggressive patient, and that the nurse may

12

request that Peace Officers assume control of the patient when less restrictive interventions have failed (<u>Id</u>.). Moreover, the Policy explains that a clinical staff member will remain present to provide clinical support during a Peace Officer intervention and that the University of Cincinnati Police Department will consult with the clinical staff to make a decision regarding criminal charges and physical removal of a patient (<u>Id</u>.). In this clinical setting, clinicians are permitted to step aside and allow the police to take the lead on patient control, under any conditions in which they are required to exercise their police powers (<u>Id</u>.).

The Policy further suggests a joint public-private operation by noting that all direct care staff in the Psychiatry Department and the UCPD Security Officers and Peace Officers will be trained in non-violet crisis intervention (<u>Id</u>.). The Court notes that further support of joint operation can be found in Section 8 of the Policy, "Process Improvement," which states that the Department of Psychiatry will maintain a log and analysis of the deployment of force to identify any trends and opportunities to reduce and eliminate the use of Devices of Force and will review current research and literature regarding the safety, effectiveness and risk associated with the use of Devices of Force (<u>Id</u>.). However, Section 4 explains that the use of Devices of Force are strictly prohibited as a method of health care intervention to primarily place a patient into seclusion and restraint (<u>Id</u>.). Thus,

13

the Policy itself sets out a role for the clinical staff to assess the use of Devices of Force which, according to the same policy, is in the exclusive purview of the Peace and Security Officers. Such coordination of the health care provider's assessment of the use of Devices of Force further indicates a joint action or nexus between the Police Department and the Medical Defendants.

In light of Section 8 of the policy, which sets out a procedure for process improvement, the Court need not rely on the "For Cause Survey" in assessing the plausibility of the Plaintiff's claims. Accordingly, the Court does not rule on  Defendants' Rule 407 objection at this time.

The Court finds the instant case to be similar to the circumstances in Wickersham v. City of Columbia, which Plaintiff cites in his response (doc. 71, citing 481 F.3d 591 (8th Cir. 2007)). In Wickersham, the court found that a non-profit corporation that operated an annual air show where it established policies prohibiting soliciting, petitioning, campaigning, and unauthorized signs was a state actor under § 1983, because it acted together with state police to enforce its speech restrictions (481 F.3d at 598-600). The court in that case found that the police department's security plan instructed the officers to enforce the corporation's rules, and police took an active role in identifying and intercepting protesters at the air show. Id. Thus, the court found that the city's cooperation with the private actor was more

14

than merely keeping the peace; it was directed toward effectuating the challenged policy. Id. The court emphasized that the "active and prearranged role of the police in effectuating the event's private speech policies" that set the case apart from others finding private entities to not be state actors. Id. Very much like in Wickersham, in the instant case the police were not merely responding to keep the peace. See id. Rather, the Policy cited by Plaintiff plausibly indicates a prearranged role for the University of Cincinnati Police Department in effectuating the hospital's policies; not only was it reviewed and revised by the UCPD, but it sets out specific procedures for hospital staff to contact the police and envisions situations in which the police will take over hospital staff's duties to control patients.

Similarly, Plaintiff points to D'Amario v. Providence Civic Center Authority, in which the First Circuit reached the same conclusion on similar facts (doc. 71, citing D'Amario v. Providence Civic Center Authority, 783 F.2d 1, 3 (1st Cir. 1986)). In D'Amario, a private entity renting out a civic center was found to be a state actor under § 1983 because the civic center, which was a public corporation, enforced a "no camera" rule by arrangement with the private entity. See 783 F.2d at 3. Again, D'Amario is similar to the instant matter because there was a prearranged plan for the public actor to enforce a rule of a private entity, which could constitute state action on the part of the private

15

corporation. <u>See</u> <u>id</u>. at 3-4. Similarly, in our case, the prearranged role of the state actors in enforcing a private entity's policy could constitute state action on the part of the private entity under the joint participant test. <u>See</u> <u>id</u>.

The Defendants' argument that the instant case is more akin to the facts of <u>Lansing</u> is unavailing (doc. 74, <u>citing</u> <u>Lansing</u>, 202 F.3d at 833-34). In <u>Lansing</u>, the court found that there was not a sufficient nexus with the private entity because the private entity merely summoned the police to request that the plaintiff leave the premises. <u>See</u> 202 F.3d at 834. The court in <u>Wickersham</u> distinguished <u>Lansing</u> by noting that in <u>Lansing</u> the City of Memphis had made no attempt to instruct its officers on how to police unwanted speech activities on festival grounds. <u>See</u> <u>Wickersham</u>, 481 F.3d at 598, <u>citing</u> <u>Lansing</u>, 202 F.3d at 833-34. Thus, the instant case can likewise be differentiated from <u>Lansing</u>, in that the UCPD presence at University Hospital was not simply a function of the Hospital invoking state police assistance. The Medical Defendants mischaracterize the UCPD's involvement in controlling unruly patients by stating that "as a precaution. . . the Medical Defendants contacted the Police Defendants to be on hand if needed" (doc. 65). This statement ignores the Policy, which sets out a dual role for hospital staff and the UCPD, with the clinical staff initially directing the Security Officers who respond and remaining present when the Security Officers are called

16

for aggressive patients (doc. 66). Accordingly, this Court finds Defendants' argument that the instant case should be guided by Lansing unpersuasive, because Lansing did not have the active and prearranged role for the police as found in this case. See Wickersham, 481 F.3d at 598.

Plaintiff's complaint alleges facts at the pleadings stage to demonstrate a sufficiently close relationship between Medical and Law Enforcement Defendants to suggest that the actions of the Medical Defendants are fairly attributable to the state. As Plaintiff explains, what constitutes a sufficiently close nexus may vary and is not subject to readily applicable formulae (doc. 71, citing Lansing, 202 F.3d at 830). Here, accepting as true all factual allegations from the Plaintiff's complaint, as it must during the pleading stage, the Court finds that the Plaintiff has stated a plausible claim for relief under § 1983. See Iqbal, 129 S.Ct. at 1937.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Medical Defendants' Partial Motion to Dismiss(doc. 65).


SO ORDERED.

Dated: June 21, 2011          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge